**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

<table>
<tr><td>————————————————————</td><td>:</td><td></td></tr>
<tr><td>JORGE TOGRA-RIVERA,</td><td>:</td><td>Civil Action No. 12-6895 (FLW)</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Petitioner,</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>v.</td><td>:</td><td><b>O P I N I O N</b></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>C. HARRIGAN et al.,</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Respondents.</td><td>:</td><td></td></tr>
<tr><td>————————————————————</td><td>:</td><td></td></tr>
</table>

**Wolfson**, District Judge:

This matter comes before the Court upon the Clerk's receipt of Jorge Togra-Rivera's ("Petitioner") Petition, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. See Docket Entry No. 1. The Petition arrived accompanied by Petitioner's motion t proceed without payment of filing fee, which this Court construes as Petitioner's in forma pauperis ("IFP") application. See Docket Entry No. 1-1.

For the reasons set forth below, Petitioner's IFP application will be denied without prejudice, and the Petition will be dismissed for failure to assert a violation of Petitioner's federal rights. However, Petitioner will be granted leave to file an amended pleading.

I.    **BACKGROUND**

Petitioner is an alien detainee challenging his detention by the Department of Homeland Security ("DHS") at Monmouth County Correctional Institution.[1]  His Petition is a rather lengthy submission.  See, generally, Docket Entry No. 1.  However, the Petition alleges mainly pre-printed legal statements, see id., while the factual information pertaining to Petitioner's own circumstances is scarce.[2]

Indeed, the only facts this Court could gather from carefully examining the Petition are that: (a) Petitioner is a native and citizen of Ecuador, see id. at 2; (b) Petitioner entered the United States by illegally crossing the nation's Texan border on August 5, 2005, see id. at 3; (c) at certain, unspecified in the Petition date(s), Petitioner committed certain, unspecified in his Petition, criminal offense(s), and said offense(s) resulted in his criminal conviction(s) and incarceration, see id.; (d) that incarceration ended on April 24, 2012, see id.; and (e) on the same day, Petitioner was

---

[1]  Petitioner's submission makes frequent references to "ICE."  See Docket Entry No. 1.  "ICE" means U.S. Immigration and Customs Enforcement, which is "the principal investigative arm of the [DHS]."  See <<http://www.ice.gov/about/overview/>>.

[2]  "Habeas corpus petitions must meet heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994).  A petition must "specify all the grounds for relief" and set forth "*facts supporting each of the grounds thus specified*." 28 U.S.C. § 2254 Rule 2(c) (amended Dec. 1, 2004, applicable to § 2241 petitions through Habeas Rule 1(b)) (emphasis supplied).

2

transferred from his penal confinement into ICE custody, <u>see</u> <u>id.</u>;
although (f) Petitioner had been ordered removed by a certain
immigration judge long ago, that is, on November 18, 2005 (<u>i.e.</u>,
three-and-a-half months after his illegal entry in the United
States).  <u>See</u> <u>id.</u> at 6.  On the basis of the foregoing facts,
Petitioner seeks either this Court's order directing an
immigration judge to hold a bond hearing as to the validity of
Petitioner's current confinement or an order directing  his
release.  <u>See</u> <u>id.</u>  Petitioner seeks these remedies on the grounds
that his "removal cannot be accomplished in the reasonably
foreseeable future" because "Petitioner has [been in ICE] custody
. . . for a total of approximately six months and 1 week."  <u>Id.</u>
at 3 and 6.

## II.  DISCUSSION

### A.  Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not
extend to a prisoner unless . . . he is in custody in violation
of the Constitution or laws or treaties of the United States."
28 U.S.C. § 2241(c)(3).  Federal courts have subject matter
jurisdiction under 28 U.S.C. § 2241(c)(3) if two requirements are
satisfied, namely, that (1) the petitioner is "in custody," and
(2) the custody is "in violation of the Constitution or laws or
treaties of the United States." 28 U.S.C. § 2241(c)(3); <u>see</u>  <u>also</u>
<u>Maleng v. Cook</u>, 490 U.S. 488, 490 (1989).

In this case, Petitioner is in custody within this Court's jurisdiction, and has alleged that his detention is not statutorily authorized.  Accordingly, the Court will exercise subject matter jurisdiction over the Petition.  Accord Zadvydas v. Davis, 533 U.S. 678, 699 (2001); Diop v. ICE/Homeland Security, 656 F.3d 221, 226 (3d Cir. 2011).

**B.   Principles Governing Pre-Removal and Removal Periods**

The critical shortcoming of Petitioner's application stems from his conflation of the legal principles applicable to habeas challenges raised by "pre-removal-period" aliens and habeas claims raised by "removal-period" detainees.

The aforesaid distinction cannot be duly appreciated without a clarification of what the meaning of the term "removal period" is, since this is a legal term of art provided by the relevant statutory language.  Specifically, Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien from the United States.  Detention during that "removal" period is mandatory[3] and, in addition, § 1231(a) provides that this "removal period" shall be extended, and the alien may remain in detention during such extended period, if the alien "acts to

_____

    [3]  Section 1231(a)(2) mandates detention during the removal period.  See 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien.  Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 212(a)(2) or 212(a)(3)(B)").

prevent the alien's removal [ensuing from his/her] order of removal." 8 U.S.C. § 1231(a)(1)(C).

This "removal period" starts on the *latest* of the following: (a) the date when the order of removal becomes administratively final (that is, appeal to the Board of Immigration Appeals ("BIA") was either taken and ruled upon, or the time to appeal expired); or (b) if the removal order is judicially reviewed and, in addition, if a circuit court orders a stay of the removal, then it is the date of the court's final order as to that removal, or (c) if the alien is detained or confined (except under an immigration process), then it is the date when the alien is released from confinement.[4]  See 8 U.S.C. § 1231(a)(1)(B).

Moreover, even after the 90-day "removal period," the government may further detain the alien, under 8 U.S.C. § 1231(a)(6), for a "certain" period of time.

> Specifically, recognizing that some countries might never agree - or be able - to accept their citizens awaiting to be removed there from the United States and, thus, these detainees might end up being detained "indefinitely" (i.e., effectively spending the remainder of their lives in confinement awaiting their never-materializing removal), the Supreme Court held that aliens may be detained under § 1231(a)(6) for "a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas v. Davis, 533 U.S. at 689.

---

[4]  Here, Petitioner maintains that his order of removal became final in 2005, but he was released from his penal confinement into ICE custody only on April 24, 2012.  If this Court were to presume Petitioner's factual assertions true, Petitioner's removal period began to run on April 25, 2012.

<u>Hany El Sayed v. Holder</u>, 2012 U.S. Dist. LEXIS 16808, at *7-8 (D.N.J. Feb. 9, 2012).

Being mindful that its holding would lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts," recognized a six-month "*presumptively* reasonable period of detention." <u>Zadvydas</u>, 533 U.S. at 700-01 (emphasis supplied).  Yet, after establishing this presumptively reasonable period of detention, the Supreme Court stressed, in no ambiguous terms, that even

> [a]fter this 6-month period, o[nly if] the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  *This 6-month presumption, of course, does not mean that every alien not removed must be released after six months*.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

<u>Id.</u> at 701 (emphasis supplied).[5]

---

[5]   In addition, since no language in <u>Zadvydas</u> excluded or limited the operation of the tolling-like function enunciated in 8 U.S.C. § 1231(a)(1)(C), an alien who, during his presumptive <u>Zadvydas</u>-based period, takes actions delaying his removal (<u>e.g.</u>, by refusing to cooperate with the ICE in his/her removal to his/her country of origin), cannot demand his/her release upon expiration of these six months.  <u>See</u>, <u>e.g.</u>, <u>Wang v. Carbone</u>, 2005 U.S. Dist. LEXIS 24499 (D.N.J. Oct. 17, 2005) (calculating the presumptive period excluding the period of non-cooperation and relying on <u>Riley v. Greene</u>, 149 F. Supp. 2d 1256, 1262 (D. Colo. 2001), and <u>Sango-Dema v. District Director</u>, 122 F. Supp. 2d 213, 221 (D. Mass. 2000)).  Rather, the period affected by the alien's

Indeed, the burden is on the alien to "show[ that] that there is 'no significant likelihood of removal in the reasonably foreseeable future.'"  Encarnacion-Mendez v. Attorney General of U.S., 176 F. App'x. 251, 254 (3d Cir. 2006).  As the Court of Appeals explained,

> Once the six-month period has passed, the burden is on the alien to 'provide [ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future . . . .' Zadvydas v. Davis, 533 U.S. 678, 701 (2001).  Only then does the burden shift to the Government, which 'must respond with evidence sufficient to rebut that showing.' Id.

Barenboy v. Attorney General of U.S., 160 F. App'x 258, 261 n. 2 (3d Cir. 2005).

Significantly, mere passage of time is facially insufficient to meet alien's burden of proof.  See Fahim v. Ashcroft, 227 F. Supp.2d 1359, 1365-68 (N.D. Ga. 2002); Boyce v. Holder, 2010 U.S. Dist. LEXIS 21435 (M.D. Pa. Feb. 18, 2010) (the fact that a Panama-native was held in detention awaiting removal in excess of

---

obstructive actions is excluded from the presumptive period articulated in Zadvydas, thus causing a quasi-tolling mimicking, in its operation, the tolling articulated in § 1231(a)(1)(C). Indeed, it would be anomalous to suggest that an alien's frustration of the government's efforts to remove him/her would reward the alien with release from custody if the alien is persistent enough to keep his/her thwarting activities for a period exceeding Zadvydas-based six months.  "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal.  The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003).

7

six months could not establish that his detention was unlawful where his removal proceedings were underway and the Government was in the process of obtaining his travel documents, having cooperation of Panama officials); Peynado v. Bureau of Immigration & Custom Enforcement, 2009 U.S. Dist. LEXIS 3538, at *6 (M.D. Pa. Jan. 20, 2009) ("Not every alien must be released after six months.  An alien may still be detained beyond six months 'until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future'") (quoting Zadvydas, 533 U.S. at 701); compare Seretse-Khama v. Ashcroft, 215 F. Supp. 2d 37, 48-54 (D.D.C. 2002) (a post-removal-order continued detention for over three years, coupled with eight-month delay since the Government last contacted destination country, suffices to meet alien's burden); but see Lema v. U.S. I.N.S., 214 F. Supp. 2d 1116, 1118 (W.D. Wash 2002), aff'd on other grounds, 341 F.3d 853 (9th Cir. 2003) (where destination country's lack of response to request for travel documents is combined with the Government's inability to explain silence and absence of any indication that situation may change, continued detention would be unreasonable but, where destination country's failure to respond suggests nothing more than "bureaucratic inertia," removal remains "foreseeable").

In contrast, an alien held in the ICE custody during the time which cannot qualify as the alien's "removal period" has no

basis to raise <u>Zadvydas</u> challenges (and, correspondingly, no
basis to seek outright release); rather, that alien could raise
habeas claims seeking a qualitatively different habeas relief,
<u>i.e.,</u> a remedy in the form of a bond hearing, which could be
ordered in the event the alien has been held for a prolonged
period of time under § 1226(c) (that is, the statute, which does
not expressly provide for a bond hearing).[6]  Analogously, a pre-
removal-period alien detainee held in custody as a result of the
Government erroneous interpretation of the mandatory detention
provision contained in § 236(c) of the Immigration and
Nationality Act, codified at 8 U.S.C. § 1226(c), may seek habeas
relief in the form of a bond hearing before an immigration judge
if that alien can show that he should be deemed a § 1226(a)
rather than a § 1226(c) detainee.  <u>See</u>, <u>e.g.</u>, <u>Baquidy v. Elwood</u>,
2012 U.S. Dist. LEXIS 158254 (D.N.J. Nov. 5, 2012); <u>Nimako v.</u>

---

[6]  Although the Supreme Court, in <u>Demore v. Kim</u>, held that
Section 1226(c) "detention during deportation proceedings [is] a
constitutionally valid aspect of the deportation process," <u>see</u>
538 U.S. 510, 523 (2003), the Court of Appeals recently finessed
the holding of <u>Demore</u> by ruling that

> § 1226(c)[] . . . implicitly authorizes detention for
> [only] a reasonable amount of time, after which the
> authorities must make an individualized inquiry into
> whether detention is still necessary to fulfill the
> statute's purposes of ensuring that an alien attends
> removal proceedings and that his release will not pose
> a danger to the community.

<u>Diop</u>, 656 F.3d at 231.

Shanahan, 2012 U.S. Dist. LEXIS 133110 (D.N.J. Sept. 18, 2012);

Kot v. Elwood, 2012 U.S. Dist. LEXIS 61346 (D.N.J. May 2, 2012).

However, this form of remedy and these legal analyses appear inapplicable to Petitioner's circumstances, since he maintains that his order of removal has become final, and that he is in the process of being removed to his country of origin.

**C.   Petitioner's Allegations Failed to Shift the Burden**

In light of the foregoing, the Court construes that Petitioner asserted only Zadvydas-governed challenges.  See, generally, Docket Entry no. 1.  However, the entirety of his argument in support of his position that there is no significant likelihood of his removal to Ecuador in the reasonably foreseeable future rests on the sole point that, thus far, the Government has taken one week longer than the non-binding presumptive period suggested in Zadvydas in order to effectuate Petitioner's removal to his country of origin.  This Court does not find such mere passage-of-time sufficient to shift the burden to the Government.  See Zadvydas, 533 U.S. at 701; Barenboy 160 F. App'x at 261 n. 2; Fahim, 227 F. Supp. 2d at 1365-68 (N.D. Ga. 2002); Boyce, 2010 U.S. Dist. LEXIS 21435; Peynado, 2009 U.S. Dist. LEXIS 3538, at *6.

Indeed, political instability in Ecuador has ended in 2006, see <<http://www.state.gov/r/pa/ei/bgn/35761.htm>>, and that country was been extensively cooperating with the United States

10

officials in effectuating removal of Ecuadorian citizens.  See
<<http://www.justice.gov/eoir/statspub/fy11syb.pdf>> and <<http:
//www.dhs.gov/xlibrary/assets/statistics/publications/enforcement
_ar_2009.pdf>> (showing continuous year-to-year increase in
removal of aliens to Ecuador starting from 2008, with the number
of removed aliens in 2009 exceeding 2,000 and approaching 3,000
in 2011). Accordingly, this Court is constrained to dismiss the
Petition, as drafted.[7]

However, being mindful of Petitioner's pro se litigant
status, the Court cannot rule out the possibility that Petitioner
might be able to articulate a viable Zadvydas claim: since he
might be able to assert facts (reflecting on his *personal
circumstances*) showing that there is no likelihood of his removal
to Ecuador within foreseeable future regardless of his past and
present active cooperation with the Government in its efforts to
remove him.  Therefore, in the event Petitioner elects to assert

---

[7]  Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not
extend to a prisoner unless . . . he is in custody in violation
of the Constitution or laws or treaties of the United States."
28 U.S.C. § 2241(c)(3).  Thus, a federal court has subject matter
jurisdiction under § 2241(c)(3) if two requirements are
satisfied: (1) the petitioner is "in custody,"; and (2) the
custody could be "in violation of the Constitution or laws or
treaties of the United States."  28 U.S.C. § 2241(c)(3); see also
Maleng, 490 U.S. at 490.  Consequently, this Court could have
subject matter jurisdiction over Petitioner's pleading only if he
asserts facts showing that his detention is not statutorily
authorized or violates his constitutional rights.

additional facts sufficient to raise a <u>Zadvydas</u> challenge, he may do so in an amended petition.

Finally, in light of Petitioner's failure to submit a complete IFP application,[8] the Court will direct Petitioner to appropriately apply for IFP status in conjunction with Petitioner's submission of his amended pleading, if any.

## III. CONCLUSION

For the foregoing reasons, Petitioner application to proceed in this matter <u>in</u> <u>forma</u> <u>pauperis</u> will be denied without prejudice.

His Petition will be dismissed, such dismissal will be with leave to amend.

An appropriate Order accompanies this Opinion.

---

[8]   In a habeas matter, the prisoner seeking to proceed IFP must submit to the Clerk: (a) a completed affidavit of poverty; and (b) a certification signed by an authorized officer of the institution certifying both the amount presently on deposit in the petitioner's prison account as well as the greatest amount on deposit in the petitioner's prison account during the six month period prior to the date of the certification.  <u>See</u> Local Civil Rule 81.2(b).  The prisoner's legal obligation to prepay the filing fee or to duly obtain IFP status is automatically incurred by the very act of initiation of his legal action.  <u>See</u> <u>Hairston</u> <u>v. Gronolsky</u>, 2009 U.S. App. LEXIS 22770, at *5 (3d Cir. Oct. 15, 2009) (citing <u>Hall v. Stone</u>, 170 F.3d 706, 707 (7th Cir. 1999)).  Here, Petitioner submitted a motion, <u>see</u> Docket Entry No. 1-1, the language of which could, loosely, qualify as an affidavit of poverty.  However, Petitioner submitted no certification of his prison account.  Because Petitioner is granted an opportunity to amended his pleading, he may submit a proper certification supporting his IFP application together with his amended petition should he choose to re-file.

    /s/ Freda L. Wolfson
**Freda L. Wolfson,**
**United States District Judge**

Dated:    November 15, 2012